IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RALPH LESLIE BUSLER,
    Plaintiff,

OPINION & ORDER

v.

12-CV-76-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Ralph L. Busler seeks judicial review of a final decision of the Commissioner of Social Security confirming an administrative law judge's finding that Busler was not disabled within the meaning of the Social Security Act. Busler principally contends that remand is warranted because the administrative law judge: (1) failed to develop the record fully and fairly in the face of additional evidence of his left knee deterioration after the state agency physicians reviewed the record; and (2) failed to discuss adequately "medical findings" in the record where two state agency physicians opined differently on whether Busler's condition was limited to *sedentary* or *medium* work. For the reasons set forth below, the case will be remanded to the Commissioner for rehearing.

BACKGROUND

I. Procedural History & Factual Background

On April 21, 2009, Busler applied for Disability Insurance Benefits ("DIB") (AR 112-15) and Supplemental Security Income ("SSI") (AR 116-19.) The agency initially

denied his applications. (AR 53-63.)  On December 7, 2010, after filing a request for hearing, Busler appeared and testified before Administrative Law Judge ("ALJ") Stephen J. Ahlgren. (AR 16-31.)  On February 11, 2011, the ALJ determined that Busler was not under a disability as defined under the Social Security Act. (AR 44-49.)  On December 20, 2011, the Appeals Council declined Busler's request for review. (AR 1-5.)  On February 2, 2012, Busler filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. § 405(g).

Busler alleges disability due to left knee pain and lower back pain.  Medical records document a history of knee injuries that began during high school, where Busler played football. (AR 19).  Busler testified that he has experienced chronic knee pain since that time.  He further testified that he has not been employed since January 2009, when he was working as a cook. (AR 19.)  Although Busler was hired to work full-time, he ended up working only two days each week. (AR 19.)  According to Busler, this was because he missed many work days as a result of problems with his knees and back.  (AR 19.)

Busler further testified to living by himself in a trailer. (AR 22.)  He found it difficult to perform household chores, such as cleaning windows or pushing a vacuum cleaner. (AR 22.)  He said that swelling in his knee limited his walking to about one-hundred and twenty yards each day. (AR 23.)  Busler estimated that he could stand for fifteen-to-twenty minutes before he would be bothered by pain. (*Id.*)  Busler also reported attending physical therapy and using a brace and a cane when the pain reached higher thresholds. (AR 25.)

2

**II. Relevant Medical Evidence**

    **A. Consultative Examiners**

On October 15, 2007 (approximately eighteen months before his alleged onset date), Busler saw Steve A. Bowman, D.O., who recorded both his weight and height. (AR 175.) Dr. Bowman diagnosed low back strain and advised Busler to return to work but to avoid lifting from the floor to his waist and to avoid lifting more than twenty pounds. (*Id.*) Dr. Bowman also recommended that Busler alternate sitting, standing, and walking on a regular basis. (*Id.*) He further advised Busler to avoid frequent or prolonged bending or twisting at his waist. (*Id.*) Ultimately, Dr. Bowman gave Busler home exercises to perform and advised him to take Ibuprofen 600 mg three or four times each day with food. (*Id.*)

On August 20, 2009, Busler saw Brian Allen, D.O., M.D., and complained of left knee and back pain. (AR 185.) Busler described the knee injury that he suffered while playing football in high school, telling Dr. Allen that his left knee would occasionally "give out" while walking. (*Id.*) Busler also told Dr. Allen that he would occasionally use a cane or crutch, but that he did not routinely use an assistive device. (*Id.*) On examination, Dr. Allen found a normal range of right knee motion and a decreased range of motion in his left knee. (*Id.*) Although Busler had tenderness over his lower back, straight-leg-raising tests produced negative results. (*Id.*) Dr. Allen reported a range of motion of 120 degrees in Busler's left knee (150 degrees being normal). (*Id.*) Dr. Allen diagnosed knee pain secondary to arthritis and noted a history of loss of the meniscus

secondary to injury and surgery. (*Id.*)  Busler also had patellofemoral problems that were visible on physical examination. (AR 188.)

### B.  State Agency Physicians

Critical to disposition of this case are the reports of two state agency physicians. On September 9, 2009, the first report was prepared by Syd Foster M.D., who ultimately concluded that Busler was limited to sedentary work due to his left knee and back pain. He noted that Busler's subjective complaints of pain were largely "credible." (AR 190-194.)  The following excerpt provides key findings from Dr. Foster's report:

> The Claimant is a 42 year old Male who has been diagnosed with [left] knee arthritis. Knee x-ray on 8/19/09 showed mild to moderate degenerative arthritis in [left] knee joint with at least mild lateral compartment narrowing and some irregularity of the lateral femoral condyle articulating surface. At his exam on 8/20/09, his walking was unimpaired. There was no peripheral edema. [Right] knee ROM was normal. [Left] knee motion was decreased. There was no evidence of any joint effusion of the [left] knee. Medial and lateral collateral ligaments appeared intact. He had tenderness over the joint line on both the lateral and medial side. **The patella appeared to be shifted laterally and with active extension of the leg he had a definite lateral tracking of his patella.** He had full use of his hands. Measurement of the quadriceps on the **left was 46cm** and 52 1/2cm on the right. He **had tenderness over the lower back**. Straight leg raise was negative bilaterally. **He had 3/5 strength on the left quadriceps compared to the right.** The claimant is limited to work at the sedentary exertional level due to his knee and back pain."

(AR 190-191(emphasis added).)

On October 9, 2009, Mina Khorshidi M.D., provided a second state agency report. Dr. Khorshidi ultimately concluded that Busler be limited to medium work, with limitations to frequent crouching and crawling. (AR 198.) She noted that Busler

> has had no recent treatment for back and knee pain or arthritis. He was examined by Dr. Allen in 8/09 for SSA. He reported he has had previous arthroscopy on the L knee, now has chronic pain. He is unable to do heavy lifting due to knee pain, uses a cane on bad days. Gait is unimpaired. R knee ROM is nml, L knee flexion 120/150, no effusion in either, but has tenderness in the L knee. He has tenderness in the lower back, neg SLR, nml lumbar ROM. Nml ROM in the shoulders, hips, ankles, wrists. **He has 3/5 strength in the L quads, compared to the R**. Senses intact, reflexes nml. No radicular pain signs in the LEs. The clmt does a full range of activities at home, but **said he is limited somewhat by** knee pain. However, he is able to stand for 2-3 hrs and walk for up to 45 minutes at a time. He reported that he lost his last job for reasons not related to a physical impairment. The clmt's condition does not meet or equal a listing. **He does demonstrate signs of L knee DJD and should be limited to medium work with no constant kneeling and crouching.** The clmt's statements about his conditions and their functional limitations **are less than credible** due to the **lack of medical treatment** to show he has a severe impairment. His functional report also does not indicate severe limitation in functioning.

(AR 202(emphasis added).)

**C. Additional Evidence: Lawrence D. Furlong, M.D.**

On September 23, 2010, Busler presented at St. Claire Health Mission with left knee pain. (AR 211.) He reported that standing tended to cause pain, which resulted in a limp when walking. (AR 211.) He was recommended for physical therapy. (AR 209.)

On January 24, 2011, Lawrence D. Furlong, M.D., reviewed three x-ray of Busler's left knee. (AR 214.) Dr. Furlong saw "marked joint space narrowing, present laterally with early superimposed degenerative changes." (AR 214.) Dr. Furlong commented that the lateral joint space narrowing had "progressed somewhat since September 9, 2009." (AR. 214.)

**III. The ALJ's Decision**

The ALJ found that Busler: (1) met the insured status requirements of the Social Security Act through March 31, 2010; (2) had not engaged in substantial gainful activity since April 21, 2009; and (3) had, as a severe impairment, left knee arthritis. (AR.46.) The ALJ also found that Busler did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*)

Adopting Dr. Khorshidi's report, the ALJ determined that Busler's residual functional capacity ("RFC") would allow him to "perform medium work, except no constant crouching or kneeling." (AR 46-47.) The ALJ found that Busler was "capable of performing past relevant work as a cook," but was precluded from activities noted in the RFC, namely, crouching or kneeling. (AR.47.) The ALJ found that Busler had not been under a disability, as defined in the Social Security Act, from April 21, 2009, through the date of the decision. In his decision, the ALJ did not address Dr. Furlong's more recent findings of degenerative changes to Busler's left knee following Khorsidi's report.

OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Sec'y of Health and Human Servs.,* 969 F.2d 534, 538 (7th Cir. 1992). A decision cannot stand if it lacks evidentiary support. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The ALJ must also explain his "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Id.; see Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

"Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record." *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000) (citing *Thompson v. Sullivan,* 933 F.2d 581, 585 (7th Cir. 1991)); *see also Richards v. Astrue*, 370 F. App'x. 727, 731 (7th Cir. 2010) ("[A]n ALJ may not draw conclusions based on an

7

undeveloped record and has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable"); *Smith*, 231 F.3d at 437 (stating that "failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence").

Here, Busler principally contends that remand is merited because the ALJ: (1) failed to fully and fairly develop the record despite additional evidence of left knee deterioration after the state agency physicians reviewed the record; and (2) failed to adequately discuss "medical findings" in the record where two state agency physicians (Drs. Foster and Khorshidi) opined differently on whether Busler's condition was limited to sedentary work or medium work. Because the court finds that the ALJ's decision is deficient regarding both issues, the court will remand this case for further consideration.

### I. Additional X-ray Evidence Not Considered by State Agency Physicians

Busler contends that despite the worsening condition of his left knee between the time of Dr. Khorshidi's evaluation and the time of the hearing of evidence, the ALJ failed to properly account for new x-ray evidence showing further deterioration of Busler's condition. With respect to this evidence, he challenges the ALJ's decision on two bases.

Busler first argues that the ALJ's analysis fails to comport with SSR 96-6p. Pursuant to that Ruling, an ALJ should obtain an updated medical opinion from a medical expert where additional medical evidence is received that could modify the state agency medical consultant's finding that an impairment was not equivalent in severity to those in the Listing of Impairments. *Id.* The Ruling further provides that when an

updated medical judgment as to medical equivalence is required, the ALJ must call on the services of medical support staff. *Id.*

As an initial matter, the Commissioner fails to directly meet Busler's contention on this issue, which alone would be enough to justify a remand. Regardless, the new x-ray evidence shows marked changes that may have modified the medical opinions of the state agency physicians, particularly Dr. Khorshidi's opinion who found Busler's subjective complaints less than credible. Not only did the evidence come into existence nearly 15 months after Dr. Khorshidi's final report upon which the ALJ relied, but the evidence arguably shows that there has been notable deterioration of Busler's left knee. This evidence appears both relevant and material to Busler's disability claim. The fact that it was not even addressed in the ALJ's short, six-page decision constitutes error.

Moreover, even though Busler has the burden to prove disability under the statute, the ALJ also has a duty to develop the record. The failure to fulfill this obligation is "good cause" to remand. *Smith*, 231 F.3d at 437. This case is no exception: regardless of the ultimate impact of Dr. Furlong's new x-ray evidence, the ALJ erred in failing to afford the state physicians an opportunity to review their opinions in light of this evidence. (AR 214.) Indeed, this deficiency is analogous to the one found by the Seventh Circuit in *Smith*. As here, that case involved (1) evidence of a claimant's worsening condition (like Busler's left knee); and (2) little to no evaluation of the claimant's worsening condition by a state agency physician (like Dr. Khorshidi), despite the ALJ's reliance on that physician's original report. As in *Smith*, this court will remand for further consideration of this new evidence. *See* 20 C.F.R. § 404.1527(c)(1)–(3);

*Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).

The court notes that the duty to develop the record should not be taken lightly by the ALJ on remand; even more so given the non-adversarial nature of the proceedings. *See Williams v. Massanari*, 171 F. Supp.2d 829, 833 (N.D. Ill. 2001). Indeed, it is puzzling in this case why the x-ray evidence was not provided to the state agency physicians when it seems directly relevant to Busler's disability claim.[1] In light of this, and in order to provide guidance on remand, the court recommends that both Dr. Khorshidi and Dr. Foster be afforded an opportunity to review the x-ray evidence dated January 24, 2011, as well as any related evidence that came into existence following the finalization of their reports in late 2009.

**II.   Conflicting Opinions of Two State Agency Physicians**

Busler argues that the ALJ also failed to perform a proper assessment of the conflict between the two state experts' opinions, in which Dr. Khorshidi stated that Busler remained capable of performing *medium* work, while Dr. Foster limited Mr. Busler to *sedentary* work. Despite the stark difference between sedentary and medium work limitations, the ALJ provided no indication as to why he favored Dr. Khorshidi's opinion over Dr. Foster, except to provide a single, conclusory statement that he had considered

---

[1] There is no indication in the record whether the ALJ viewed the new evidence as likely or unlikely to modify the state agency's physician's view. *See Huber v. Astrue*, 395 F. App'x 299, 302 (7th Cir. 2010); *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006); SSR 96–8p. This lack of explanation creates is a gap in the record that goes directly to Busler's condition and requires remand by itself. *See Gatewood ex rel. D.P. v. Astrue*, No. 10 C 283, 2011 WL 904864, at *10 (N.D. Ill. Mar. 14, 2011).

"the generally mild diagnostic evidence" and the "claimant's admissions regarding his physical ability." (AR 48.) Given the perfunctory nature of the ALJ's analysis, the court is persuaded that remand is necessary on this issue.

*First*, the ALJ devoted but one paragraph to Drs. Foster's and Khorshidi's conflicting opinions. This is simply not enough for meaningful appellate review, particularly when Dr. Khorshidi's opinion underpins the ALJ's RFC determination. In addition to not reconciling the obvious differences in the two opinions, there is no discussion of the fact that *both* doctors found Busler "had 3/5 strength on the left quadriceps compared to the right," which would tend to support Busler's claim, not work against it. (AR 18, 202.) Nor is there is discussion of the fact that Dr. Foster found Busler's subjective complaints credible, while Dr. Khorshidi did not.

An even more notable deficiency in the ALJ's decision is the absence of discussion of any *specific* diagnostic evidence, and how that evidence supported or undermined either medical opinion.[2] While it remains the province of the ALJ to make credibility findings, the ALJ's decision is so lacking in detail that it prevents meaningful review of the ALJ's preference for Dr. Khorshidi's opinion over that of Dr. Foster's. Because of this deficiency, remand is required for further consideration and explanation. *See Steele v.*

---

[2] This concern is only compounded by the fact that there is no reference to the new x-ray evidence in the ALJ's decision, which raises the question of whether the ALJ even reviewed this evidence in the first place (or at least reviewed the evidence with an exacting eye given its relevancy to Busler's claim). This would be considered diagnostic evidence pursuant to SSR 96–8p, but its absence from the ALJ's decision causes concern even more so in circumstances where it seemingly cuts in favor of Dr. Foster's opinion and against Dr. Khorshidi's opinion. Of course, the court cannot be sure of this because there is no discussion of the x-ray evidence (AR 214) in the ALJ's decision.

*Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (stating that a decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review").

*Second*, the ALJ failed to evaluate the conflicting medical opinions in accordance with the factors set out in 20 C.F.R. § 404.1527(c).[3] In what can only be considered token rebuttal to this criticism, the Commissioner contends that: (1) the ALJ's analysis of the factors was truncated because of the limited evidence in the record; and (2) it is *solely* the role of the ALJ to reconcile conflicting opinions, citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971).

The court rejects both arguments. While *Perales* certainly holds that the role of the ALJ is to reconcile conflicting evidence, it further states that the ALJ is "charged with developing the facts" relevant to an applicant's claim. 402 U.S. at 410. Moreover, an ALJ cannot reconcile conflicting opinions without full and fair development of the record. *Id.* As stated earlier, the ALJ here failed to develop the record with respect to Busler's new medical evidence. Had he done so, the opinions of Dr. Foster and Dr. Khorshidi would likely have been more fulsome in their analysis. In turn, there would have been further evidence in the record, affording the ALJ, as well as this court, a chance to better reconcile the opinions and properly apply the factors in 20 C.F.R. § 404.1527(c),

---

[3] The regulations specifically provide that "[r]egardless of its source, we will evaluate every medical opinion we receive" using the following factors: (1) the examining relationship, with more weight accorded to a physician who has examined the claimant than one who has not; (2) the treatment relationship, including the length of treatment of the claimant, the frequency of examination, and the nature and extent of the treatment relationship; (3) the support of the physician's opinion afforded by the medical evidence of record; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician, with more weight accorded to a specialist than to a non-specialist; and (6) other factors, including the amount of understanding of the Commissioner's disability programs and their evidentiary requirements, and the extent to which an acceptable medical source is familiar with the other information in the case record. *See* 20 C.F.R. § 404.1527(c).

including, for example, the consistency of the medical opinions of Drs. Foster and Khorshidi's with the record as a whole. *Perales*, 402 U.S. at 410; *see also Richards* 370 F. Appx. at 731(stating that "an ALJ may not draw conclusions" based on an undeveloped record).

### III. Remaining Issues

Busler raises additional issues related to the sufficiency of the underlying proceedings. Because the court finds that the ALJ failed to develop the record adequately, and that this error prevents meaningful review, the court need not and will not address the merits of these other arguments. While further review of the x-ray evidence dated January 24, 2011 by the state agency physicians may shift the evidentiary landscape to such an extent that the ALJ might want to take a fresh look at the RFC determination (as well as the other issues raised by Busler), the court does not intend to signal any result on remand.[4] Rather, the court encourages the parties, as well as the ALJ, to consider the evidence and the issues anew as part of the re-evaluation of the deficiencies actually addressed in this order. *Pierce v. Colvin*, 739 F.3d 1046, 1051 (2014)

---

[4] In any event, disposition of the remaining three issues in Busler's brief depends to a large extent on the ALJ's treatment of the first issue -- whether the ALJ fully and fairly developed record with respect to the x-ray evidence dated January 24, 2011. Notwithstanding this, the following comments may be useful on remand to those issues not addressed in this order should the ALJ take them up. With respect to the third issue raised in Busler's brief -- whether the ALJ failed to adequately consider Listing 1.02A -- the issue will likely hinge on Dr. Foster's new x-ray evidence. Without a fresh report by Dr. Foster, however, it is difficult to assess whether Busler has satisfied the Listing threshold. As to the fourth issue, whether the ALJ erred by not considering Busler's obesity in conjunction with his left knee problems, this, too, will be dependent on the renewed reports by Drs. Foster and Khorshidi in light of the new x-ray evidence. (AR 214.) Finally, as to the fifth issue, Busler's credibility, AR 214 may well support the subjective complaints by Busler regarding his deteriorating knee condition. At the same time, issues (3), (4) and (5) would likely not be enough for a remand absent the new evidence in AR 214.

(noting that the court need not address a plaintiff's remaining argument, but noting that on remand the ALJ will need to take a "fresh look" at the RFC and vocational questions after the credibility issue has been re-evaluated); *see Mollett v. Astrue*, No. 3:11–CV–238 2012 WL 3916548, at *9-10 (N.D. Ind. Sept. 7, 2012) (stating that "[b]ecause the ALJ's error regarding the hypothetical questions requires remand, the court need not consider the claimant's arguments regarding the remaining issues); *Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Ralph Leslie Busler's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 12th day of March, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge